IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAMON HERNANDEZ, | § § § | |
| *Plaintiff,* | § § | SA-19-CV-00022-FB |
| vs. | § § | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, SCHLUMBERGER GROUP WELFARE BENEFITS PLAN, | § § § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff's Motion for Summary Judgment and Brief in Support [#20] and Defendants' Cross Motion for Summary Judgment [#21]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#9]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiff's motion be **DENIED** and Defendants' motion be **GRANTED**.

**I. Procedural and Factual Background**

Plaintiff Ramon Hernandez ("Hernandez") filed this action against Defendants Life Insurance Company of North America and Schlumberger Group Welfare Benefits Plan (collectively "Defendants") to secure short-term and long-term disability benefits to which Hernandez claims he is entitled under a disability insurance plan and policy governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. The ERISA plan at

1

issue—Defendant Schlumberger Group Welfare Benefits Plan ("the Plan")—covered Hernandez by virtue of his prior employment with Schlumberger Pressure Pumping ("Schlumberger"). Defendant Life Insurance Company of North America ("LINA") is the designated claims administrator for the Plan.[1] By this action, Hernandez asserts a single cause of action for the wrongful denial of benefits under ERISA, 29 U.S.C. § 1132, and for attorney's fees and costs available under the statute. (Compl. [#1] at ¶¶ 60–64.)

The administrative record before the Court establishes that Hernandez worked as a Service Supervisor for Schlumberger from July 24, 2017 until September 28, 2017, when he ceased working based on reported mental health issues of anxiety and depression. (R. 553.) The Plan at issue provides both short-term and long-term disability benefits for eligible Schlumberger employees. (R. 668, 698.) An employee is qualified to receive short-term disability benefits if he misses more than five consecutive days of work due to a disability. (R. 668, 671, 698, 701.) These benefits will be paid retroactively from the first day of disability and continue for up to 26 weeks at 100% of an employee's "base pay." (R. 668, 671, 698, 701.) If an employee exhausts short-term disability benefits, is still unable to work, and continues to meet the requirements for short-term disability, the employee is entitled to long-term disability benefits for as long as the employee remains disabled or has reached the "maximum benefit period" under the Plan. (R. 668, 673, 680, 703.)

For purposes of short-term disability benefits and initially receiving long-term disability benefits, an employee is "disabled" if the employee is "(1) unable to perform the normal duties

---

[1] Although the Plan refers to Cigna Group Insurance as the claims administrator for the Plan (R. 715), Defendants' corporate disclosure statement [#6] states that LINA "is a wholly-owned subsidiary of Connecticut General Corporation, which is a wholly-owned subsidiary of Cigna Holdings, Inc., which is a wholly-owned subsidiary of Cigna Holding Company, which is a wholly-owned subsidiary of Cigna Corporation, a publicly traded company."

of [his] job due to an illness or injury and (2) receiving *Appropriate Care and Treatment* for that injury or illness." (R. 690, 720.) After receiving disability benefits for 78 weeks, an employee is "Disabled" only if the employee is "(1) unable to perform the duties of *any* occupation (not just [his] job at Schlumberger) for which [he is] reasonably suited due to [his] education, training or experience and (2) receiving Appropriate Care and Treatment for that injury or illness." (R. 690, 720.)

Hernandez filed a claim for short-term disability benefits based on his mental-health symptoms on November 2, 2017, and LINA began gathering medical records from Hernandez's physicians and treatment providers to determine his eligibility for benefits under the Plan. (R. 407–23.) Tammy Botello, a licensed professional counselor, provided information and records to LINA, which reflected that Hernandez first saw Ms. Botello on October 17, 2017, twenty days after he stopped working. (R. 438, 441–44.) Ms. Botello had diagnosed Hernandez with major depressive disorder and generalized anxiety disorder. (R. 438.) Ms. Botello opined that Hernandez's current mental status did not allow him "to be completely focused on his essential job functions" and recommended he be off work for 90 days, until January 31, 2018. (R. 438.)

LINA requested additional information from Ms. Botello regarding her treatment of Hernandez, as well as records related to Hernandez's treatment from Dr. Charles E. Gutierrez, a licensed psychologist to whom Ms. Botello referred Hernandez for further evaluation. (R. 469–79.) Dr. Gutierrez sent LINA his psychological assessment of Hernandez dated November 14, 2017. (R. 481–83.) Dr. Gutierrez had diagnosed Hernandez with major depressive disorder and acute stress disorder and recommended he continue with his current medication regimen and follow up with Ms. Botello for continued care. (R. 481–83.) Ms. Botello also provided

supplemental information to LINA, citing to Hernandez's panic attacks and lack of focus and noting that Hernandez had failed to appear for his last counseling appointment. (R. 487–92.)

Dr. Gitry Heydebrand, also a licensed psychologist, reviewed these medical records and the other information submitted to LINA and concluded that Hernandez was not functionally limited by his mental health symptoms or psychiatric conditions; that the treating providers' opinions were not well supported by medically acceptable clinical diagnostic techniques; that there was no indication of behavioral disturbance, cognitive dysfunction, psychotic symptomology, or a severe psychiatric disorder; and that no activity restrictions were medically necessary. (R. 484–85.) Based on this assessment, LINA denied Hernandez's claim for short-term disability benefits, concluding that none of the information provided indicated a possible impact on his day-to-day functioning. (R. 493–95.)

If a claim for benefits under the Plan is denied in whole or in part, the Plan allows a claimant to administratively appeal the determination. (R. 681–82, 711–12.) First, and as part of a claimant's mandatory administrative remedies, the determination can be appealed in writing to LINA within 180 days. (R. 681–82, 711–12.) If any part of the claim is denied on appeal, the claimant may then submit a voluntary, second appeal to the Plan's administrator—the Administrative Committee—within 180 days. (R. 682, 712.) However, this second, voluntary appeal is not part of a claimant's mandatory administrative remedies under ERISA. (R. 682, 712.)

Hernandez appealed the decision. (R. 499–504.) As part of the appeals process, LINA requested additional medical records from Ms. Botello and Sonya Jaime, a family nurse practitioner who had recently seen Hernandez. (R. 511, 598.) Ms. Jaime responded to the records request with notes from her initial visit with Hernandez on November 30, 2017, which

noted symptoms and diagnoses of depression and anxiety and recommended treatment with a trial of an antidepressant drug, Trintellix. (R. 528–43.)

Les Kertay, licensed psychologist, reviewed Hernandez's file on appeal. (R. 518–19.) Dr. Kertay also concluded that Hernandez's medical records did not support a psychiatric functional impairment that would preclude operational functioning or require work restrictions. (R. 518–19.) Dr. Kertay explained that the records contained a single office visit note from Ms. Botello, which on its own did not document any functional evaluation of Hernandez's claimed limitations or provide other explanation for an inability to perform his occupational duties. (R. 518.) Dr. Kertay also found Dr. Gutierrez's evaluation insufficient, as it did not specify Hernandez's functional limitations. (R. 518.) LINA denied the claim on appeal on January 17, 2018. (R. 520–22.)

Hernandez submitted a new claim for long-term disability benefits based on the same mental health issues on February 13, 2018. (R. 42.) LINA requested updated medical records from Hernandez's medical providers, but no additional information was received. (R. 79–86, 333.) Hernandez's file was reviewed by Dr. Aneta Predanic, a board-certified psychiatrist, on February 26, 2018. (R. 87–88.) Dr. Predanic also determined that no restrictions were medically necessary to accommodate Hernandez's psychiatric conditions because he did not suffer from any documented functional limitations. (R. 87–88.) LINA denied Hernandez's long-term disability claim on March 7, 2018, again finding that the medical records did not demonstrate Hernandez was functionally impaired so as not to be able to perform his normal job duties. (R. 102–03.)

Hernandez filed an appeal with LINA but declined to submit any additional evidence in support of his claim. (R. 129–49.) Dr. Weiran Wu, a board-certified psychiatrist, reviewed

5

Hernandez's claim on appeal and similarly opined that the medical records did not support Hernandez's claim of functional impairments that would prevent him from performing his job. (R. 236–39.) Dr. Wu noted in his assessment that he had contacted Ms. Botello, who had indicated that she had last seen Hernandez in November 2017, ten months earlier, and could not provide any other information in support of his claim. (R. 238–39.) LINA denied the claim on appeal on September 27, 2018. (R. 242–45.) Hernandez chose not to file the second, voluntary appeal with the Schlumberger's Administrative Committee.

After exhausting his administrative remedies, Hernandez filed this suit on January 10, 2019. By this action, Hernandez alleges LINA failed to afford proper weight to the evidence in the administrative record during its administrative review and erred in its interpretation of the definition of "disability" in the Plan. (Compl. [#1] at ¶ 62.) Hernandez contends that the administrative record establishes he is totally disabled and Defendants violated their contractual obligation by failing to furnish him with disability benefits. (*Id.*) Hernandez asks the Court for declaratory relief finding he is entitled to past due disability benefits and ordering Defendants to pay retroactive benefits up to the present. (*Id.* at ¶ 64.) Hernandez also asks the Court to remand his claim for further administrative review and to order the continuous payment of disability benefits until such time as LINA makes an adverse determination regarding long-term disability consistent with ERISA and his entitlements under the Plan. (*Id.*)

Hernandez now moves for summary judgment, arguing that that the administrative record establishes as a matter of law that he is disabled under the terms of the Plan and LINA's decision to deny him benefits was arbitrary and capricious. Hernandez contends that LINA improperly disregarded the significance of all of his functional limitations due to his mental impairments and all of the opinions of his treating physicians in making its benefits determination.

In response, Defendants argue that there is no evidence in the administrative record that Hernandez is disabled, such that his alleged mental impairments prevent him from performing the normal duties of his job, and LINA rationally concluded that Hernandez was not disabled within the meaning of the Plan. Accordingly, Defendants ask the Court to uphold the administrative decision to deny benefits and enter summary judgment for Defendants.

The parties also disagree as to the standard of review that should be applied in this case. Hernandez advocates for *de novo* review of the administrative benefits determination, whereas Defendants argue the decision should be reviewed only for an abuse of discretion. The motion is ripe for review.

## II. Analysis

Defendants are entitled to summary judgment, and the Court should affirm the underlying benefits determination that Hernandez is not entitled to short-term or long-term disability benefits under the Plan. An abuse of discretion—not a *de novo*—standard governs this Court's review of LINA's benefits determination.

**A.** **The Court should review the underlying disability determination for an abuse of discretion.**

Under ERISA, a beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Where an ERISA plan grants discretionary authority to the administrator with respect to the benefits determination, as the parties agree it does here,[2] courts review the denial of ERISA benefits for an abuse of discretion.

---

[2] The Plan provides: "The Plan Administrator has full discretionary authority to control and manage operation of the Group Plan, to construe and interpret the terms of the Group Plan and to delegate and allocate responsibilities for the operation and administration of the Group Plan to others." (R. 684.) "The Plan Administrator has delegated the authority and discretion to

7

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). When a plan does not include such a delegation clause, a denial of benefits challenged under Section 1132(a)(1)(B) is reviewed under a *de novo* standard. *Glenn*, 554 U.S. at 111 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

In the ERISA context, the "abuse of discretion" standard is synonymous with an "arbitrary and capricious" standard of review. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999). A decision is arbitrary and capricious if it is "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828–29 (5th Cir. 1996)). When an administrator terminates disability benefits, the law requires that substantial evidence support the decision. *Id.*; *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 273 (internal quotation and citation omitted). In general, the only evidence a district court may consider when reviewing a denial of benefits is the evidence made available for fair review to the administrator before the lawsuit was filed. *Vega v. Nat'l. Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) (en banc), *overruled on other grounds by Glenn*, 554 U.S. 105.

Usually, the application of the abuse of discretion standard is a two-step process, wherein a court first determines the legally correct interpretation of the Plan, and second, if the administrator did not apply the legally correct interpretation, determines whether the administrator's actions constituted an abuse of discretion. *Wildbur v. ARCO Chem. Co.*, 974

---

Cigna to process, investigate and decide claims and manage the daily administration of the Plan." (R. 715.)

F.2d 631, 637 (5th Cir. 1992). However, in cases not involving sophisticated Plan interpretation issues, "the reviewing court is not rigidly confined to this two-step analysis." *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994).

Despite the parties' agreement that the Plan contains a delegation clause granting the administrator discretionary authority, Hernandez argues this Court should apply a *de novo* standard of review because Texas prohibits discretionary clauses of the type contained in the Plan by statute. *See* Tex. Ins. Code. § 1701.062(a). Section 1701.062, which was enacted by the Texas Legislature in 2011, bans discretionary clauses in certain insurance policies. *Id.*; *see also Woods v. Riverbend Country Club, Inc.*, 320 F. Supp. 3d 901, 908 (S.D. Tex. 2018) (discussing enactment of Section 1701.062). A "discretionary clause" is defined by the statute as a clause that "purports or acts to bind the claimant to, or grant deference in subsequent proceedings to, adverse eligibility or claim decisions or policy interpretations by the insurer . . . ." Tex. Ins. Code § 1701.062(b)(1). Hernandez maintains this statute governs the plan at issue here and therefore the discretionary clause contained therein is unenforceable and *Firestone*'s default *de novo* review standard is applicable.

Hernandez provides no argument as to why Section 1701.062 would apply to the ERISA plan at issue in this case. As Defendants point out, the Plan is a self-funded welfare-benefit plan, not a policy of insurance issued by an insurer governed by the Texas Department of Insurance. *See* Tex. Ins. Co. §§ 1701.002, 1701.003, 1701.062. A self-funded plan is one in which the employer funds, but a third party administers, the plan, versus a fully funded plan in which an insurer both fully insures and administers the plan. Hernandez has not provided the Court with authority for his position that Section 1701.062 applies to a plan created, sponsored, and funded by Schlumberger, an entity that is not a Texas insurer.

9

Section 1701.062 by its own terms prohibits "[a]n insurer" from using certain documents if the document contains a discretionary clause. Tex. Ins. Code § 1701.062(a). The chapter in which Section 1701.062 is contained only applies to insurers, such as life, accident, health, casualty, or mutual life insurance companies, not employers funding welfare benefit plans. Tex. Ins. Code § 1701.003(a). Neither of the two cases cited by Hernandez in support of his position involved self-funded plans like the one underlying this suit. *See Taylor v. Metro. Life Ins. Co.*, 366 F. Supp. 3d 810, 815 (N.D. Tex. 2019) (applying section 1701.062 to portable insurance policy issued by regulated insurer); *see also Woods*, 320 F. Supp. 3d at 908–09 (applying section 1701.062 to fully insured plan where plan sponsor had no obligation to fund plan benefits). Although at least one Circuit Court of Appeals has concluded that a comparable state law prohibiting discretionary clauses applies to self-funded plans, that determination turned on a state-specific analysis of the relevant insurance code and therefore that court's analysis is inapplicable here. *See Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1133–335 (9th Cir. 2017) (holding that the California Insurance Code defines "insurance" broadly so as to encompass self-funded ERISA plans). Hernandez has not persuaded the Court that Texas insurance law similarly requires the application of Section 1701.062 to this case.

Moreover, even if Section 1701.062 would theoretically apply to render the discretionary clause in the Plan unenforceable, the undersigned agrees with Defendants that ERISA likely preempts this Texas law in the context of a self-funded plan. The Fifth Circuit has noted this possibility but has not yet decided the issue. *See Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 250 (5th Cir. 2018) (noting the growing trend in state laws banning insurers' use of delegation clauses, and Section 1701.062(a) specifically, and raising the possibility of preemption).

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). ERISA's preemption statute includes a savings clause, sparing from ERISA preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). To the extent that section 1701.062 can be read to apply here, to a self-funded plan that does not involve any policy of insurance, it would be expressly preempted under 29 U.S.C. § 1144(a) and not saved from preemption under 29 U.S.C. § 1144(b)(2)(A) because it arguably would not be "regulating insurance" in this instance.

And even if this law did fall under the savings clause as to a self-funded plan, "the deemer clause" revives preemption for certain laws that the saving clause might otherwise exempt from preemption. *See* 29 U.S.C. § 1144(b)(2)(B). "Under the deemer clause, an employee benefit plan governed by ERISA shall not be 'deemed' an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws 'purporting to regulate' insurance companies or insurance contracts." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). Accordingly, because the Plan at issue in this suit is self-funded, the deemer clause exempts it from state laws that "regulate insurance" within the meaning of the savings clause. *See id.* at 61. Section 1701.062 is therefore preempted by ERISA with respect to the Plan, and an abuse of discretion, not a *de novo*, standard should be applied in this Court's review of LINA's benefits determination. *See Williby*, 867 F.3d at 1135–36 (holding same).

Finally, the Court should reject Hernandez's argument that there is a structural conflict of interest that must be considered as part of the review in this case. Hernandez argues that Schlumberger both funds the Plan and made the claims determination in this case through its Administrative Committee, which is comprised of Schlumberger employees. The Supreme

11

Court has indeed held that a reviewing court should consider a conflict of interest as a factor in a benefits determination where an entity both "determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Glenn*, 554 U.S. at 108. But here, LINA, a third-party administrator, not Schlumberger or its Administrative Committee, made the benefits determination that the Court is reviewing.

By its terms, the Plan is sponsored and funded by Schlumberger for the benefit of its employees and administered by the Plan's Administrative Committee. (R. 684, 714.) However, claims for disability benefits are administered by LINA, with which Schlumberger has contracted to serve as the Plan's claims administrator. (R. 680–83, 685, 710–13, 715.) As previously explained, LINA has discretionary authority to interpret the provisions of the Plan and to interpret the facts and circumstances of claims for benefits but does not insure the Plan or fund its benefits. (R. 680–83, 685, 710–13, 715.) There is no conflict of interest to weigh in this Court's review of the administrative determination, and an abuse of discretion, not a *de novo*, standard should be applied in this case.

**B.     LINA's benefits determination was based on substantial evidence and therefore was not an abuse of discretion.**

LINA's determinations that Hernandez was not entitled to short-term or long-term disability benefits under the Plan are supported by substantial evidence contained in the administrative record. Accordingly, Hernandez has not demonstrated that LINA abused its discretion in finding that Hernandez's mental conditions did not prevent him from performing the normal duties of his job.

Again, an employee is "disabled" under the Plan if the employee is both "unable to perform the normal duties of [his] job due to an illness or injury" and "receiving *Appropriate Care and Treatment* for that injury or illness." (R. 690, 720 (emphasis in Plan language).)

"Appropriate Care and Treatment" is defined by the Plan as medical care and treatment that is "provided by appropriate medical professionals"; "consistent with a physician's diagnosis of the illness or injury causing the Disability"; "consistent in type, frequency and duration with relevant guidelines"; and "intended to maximize medical and functional improvement." (R. 719.)

The medical evidence submitted to LINA demonstrates that Hernandez was diagnosed with anxiety, depressive, and stress disorders by Ms. Botello, a licensed professional counselor, and Dr. Gutierrez, a physician and psychologist. (R. 438, 481–83.) The record establishes that Hernandez first saw Ms. Botello on October 17, 2017, a short time after he stopped working. (R. 438.) It was during this initial assessment that Ms. Botello opined that Hernandez could not focus "on his essential job functions" due to his mental conditions and recommended he take off work for 90 days. (R. 438.) This is the only visit of record Hernandez ever had with Ms. Botello.

Shortly thereafter, Dr. Gutierrez saw Hernandez and completed various psychological evaluations, which demonstrated that he was having issues with anxiety, stress, worry, and depression and that he was "very withdrawn" and having "trouble with the way in which he expresses his emotions." (R. 481–83.) Dr. Gutierrez recommended Hernandez see Ms. Botello for ongoing care and continue with his medication regimen for symptom relief with respect to his mood issues. (R. 481–83.) Yet, there is no evidence in the record that Hernandez continued to see Ms. Botello for regular treatment, and Hernandez failed to appear for his scheduled appointment with Ms. Botello on November 30, 2017. (R. 487.) Ms. Jaime, a family nurse practitioner, subsequently placed Hernandez on a trial of an antidepressant drug, Trintellix. (R. 528–43.) There is no evidence in the administrative record of any additional appointments, counseling sessions, assessments, or evaluations by any other mental health provider. When

solicited for additional information in support of Hernandez's claim for long-term disability benefits, none of Hernandez's providers submitted additional medical evidence. Thus, the only evidence submitted by Hernandez to LINA at the time of its two disability decisions was Ms. Botello's initial evaluation based on a single office visit and Dr. Gutierrez's one-time evaluation. Ms. Jaime did not evaluate Hernandez's psychiatric symptoms; she simply recorded notes of his self-reported symptoms of depression, anxiety, and difficulty with concentration and motivation, and provided him with a pharmaceutical prescription.

Based on this medical evidence, LINA concluded that "there was not enough evidence to support a global functional impairment" and that the medical evidence did not document or describe the "frequency, intensity, or duration" of symptoms or the specific tasks and or activities Hernandez was unable to perform or that would limit his ability to work. (R. 494.) LINA's decision on appeal similarly concluded that there were insufficient clinical findings to support a conclusion that Hernandez suffered a functional loss that precluded him from working and that the medical information was not specific enough to establish what impairments resulted from Hernandez's depression and anxiety and how these impairments affected his activities of daily living. (R. 520–22.) LINA's long-term disability decision, which was based on the same medical evidence and applied the same standard for disability, found that the medical information did not demonstrate severe psychiatric symptoms that would preclude Hernandez from his normal job duties. (R. 102–04.)

The record reviewed by LINA in making these decisions also included the opinions of several licensed psychologists and psychiatrists, all of whom also reviewed the medical records in order to provide additional evaluations for LINA. All four of these physicians concluded that the medical evidence did not sufficiently demonstrate that Hernandez was functionally limited by

his mental health symptoms to such a degree that he was unable to perform his job at Schlumberger. (R. 87–88, 236–39, 484–85, 518–19.) And all of these opinions commented on the lack of specificity and documentation in the assessments by Ms. Botello and Dr. Gutierrez as to activity restrictions and disabling symptomology resulting from the anxiety and depression diagnoses. (R. 87–88, 236–39, 484–85, 518–19.) On this record, LINA's decisions cannot be said to have been arbitrary or capricious. LINA considered all the medical evidence, chose to credit the non-treating licensed psychologists and psychiatrists, and explained the rational basis for its decisions. This was not an abuse of discretion.

Hernandez argues that LINA erred by crediting the opinions of LINA's experts over Hernandez's treating physicians, ignoring his subjective symptoms, and demanding objective tests to establish his impairments when such objective tests either do not exist or could have been ordered by Defendants but were not. Hernandez also faults LINA for failing to discuss Ms. Botello's prescription of weekly counseling sessions as part of Hernandez's treatment, which Hernandez argues would have affected his attendance at work. None of these arguments is persuasive under the governing law. The Fifth Circuit has "never . . . held" that a claims administrator is required to discuss every piece of evidence it considered in reaching its conclusion. *Spenrath v. Guardian Life Ins. Co. of Am.*, 564 Fed. App'x 93, 98 (5th Cir. 2014). Nor is it an abuse of discretion for an administrator to rely on the opinions of independent medical specialists over a claimant's treating physicians. *Id.* at 98 (ERISA "does not require that the opinions of treating physicians be preferred over those of other physicians reviewing a file."). And, critically, this Court "may not second guess" the administrative determination. *Id.* The only role of this Court is to determine whether the decisions denying benefits were supported by substantial evidence. *Ellis*, 394 F.3d at 273. The Court need only "assure that the

administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Vega*, 188 F.3d at 297.

The undersigned is also not persuaded by Hernandez's argument that it was an abuse of discretion for LINA not to discuss the potential impact of the prescribed one-hour weekly therapy sessions on Hernandez's ability to work. No medical provider opined that Mr. Hernandez's weekly therapy sessions were the reason he was unable to perform his job functions. LINA also did not err by noting the lack of objective evidence of Hernandez's claimed functional impairment. It could be error for a claims administrator to discount detailed findings of specific impairments and disability by demanding objective tests that are not available. But that is simply not the case here. Hernandez directs the Court to several out-of-circuit opinions to support this argument, but these cases are neither binding nor involve records that are analogous to the record before the Court. For example, in *Salomaa v. Honda Long Term Disability Plan*, the Ninth Circuit found an abuse of discretion where a claims administrator rejected the opinions of at least four examining physicians and two psychologists, all of whom concluded, "often in dramatic language," that the claimant was totally disabled by chronic fatigue syndrome, due to the lack of objective evidence of the condition in the form of blood or other more quantifiable tests, where such tests indisputably did not exist. 642 F.3d 666, 677–78 (9th Cir. 2011). Whereas here, we have a treating and examining physician, Dr. Gutierrez, who did complete a psychological evaluation, including objective mental health tests, such as the Beck Anxiety Inventory and Beck Depression Inventory, but did not provide any detailed description of how Hernandez's depressed mood and impaired concentration rendered him unable to perform his job duties. And we have a medical record that is extremely scant. It is not unreasonable for the claims administrator to require support for the diagnoses and conclusions of

16

medical providers, where such objective tests do exist (such as the anxiety and depression inventories performed on Hernandez) and there could be a more detailed explanation as to the nature of the functional impairments caused by various mental health conditions. LINA was not required to accept Hernandez's diagnoses of depression and anxiety, without more, as indicative of disability as defined in the Plan.

As the Fifth Circuit has explained, it is the claimant, not the claims administrator, who bears the burden of demonstrating an entitlement to benefits by supplying evidence of disability. *McDonald v. Hartford Life Grp. Ins. Co.*, 361 Fed. App'x 599, 610 (5th Cir. 2010); *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993). LINA did not abuse its discretion in choosing not to credit Ms. Botello's evaluation, based on a single office visit, that Hernandez was unable to perform his job functions, particularly in light of her failure to support this opinion with any specific description of his functional impairments.

In summary, Hernandez has not established that LINA adopted an incorrect interpretation of the Plan, and substantial evidence exists in the administrative record to support LINA's denial of Hernandez's claims for short-term and long-term disability benefits. Therefore, LINA's administrative decisions were not an abuse of discretion or arbitrary and capricious. The Court should deny Hernandez's motion for summary judgment, grant summary judgment to Defendants, and affirm the administrative determinations.

**C.  The Court has discretion to award Defendants reasonable attorney's fees and costs, and Defendants should file a separate motion for the Court's consideration.**

Both parties request an award of attorney's fees and costs under ERISA. This Court has discretion to allow reasonable attorney's fees and costs to either party in any action to recover benefits under an ERISA plan. 29 U.S.C. § 1132(g)(1). A fees claimant must show "some degree of success on the merits" before a court may award fees under ERISA. *Hardt v. Reliance*

*Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). Because Hernandez is not entitled to recover on his claim for benefits under Section 502(a)(1)(B) of ERISA, he is not entitled to recover any fees. The Court may, however, award Defendants reasonable fees in its discretion. Defendants should file a separate motion for fees in compliance with this Court's Local Rules. Prior to filing the motion, Defendants should confer with Plaintiff regarding both (1) whether Plaintiff opposes Defendants' claim for costs and fees, and (2) whether Plaintiff disputes that the fees and costs claimed by Defendants are reasonable.

### III.  Conclusion and Recommendation

Having considered the parties' cross motions for summary judgment, the governing law, and the administrative record in this case, the undersigned recommends that Plaintiff's Motion for Summary Judgment and Brief in Support [#20] be **DENIED,** Defendants' Cross Motion for Summary Judgment [#21] be **GRANTED**, and the Court affirm LINA's denials of disability benefits under the Schlumberger Welfare Benefits Plan.

### IV.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which

objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 1st day of April, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE